# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF
# IOWA CENTRAL DIVISION

| | |
|---|---|
| REBECCA J. JONES,<br><br>　　　　PLAINTIFF,<br><br>vs.<br><br>DIVERSIFIED ADJUSTMENT SERVICE, INC., and XCEL ENERGY, INC.,<br><br>　　　　DEFENDANTS. | **Civil Action No.**<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, Rebecca J. Jones ("Plaintiff" or "Jones") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendants, Diversified Adjustment Service, Inc. (hereinafter "Defendant" or "Diversified"), and Xcel Energy, Inc. (hereinafter "Defendant" or "Xcel"), alleges as follows:

## I.　　INTRODUCTION

1. This is an action for damages brought by an individual consumer for the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices and the invasions of the Plaintiff's personal privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt.

## II.     JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper in that the Defendants transact business in Iowa and the conduct complained of occurred here.

## III.    PARTIES

3. Plaintiff, Jones, is a natural person residing in Polk County, Iowa.

4. Defendant, Diversified, is a business principally located in Minnesota who is engaged in the collection of debts owed to another in the State of Iowa.

5. Defendant, Xcel, is a business principally located in Minnesota who is engaged in the collection of debts owed to another in the State of Iowa.

6. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

7. The Defendant, Diversified, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

8. The Defendant, Xcel, is a "debt collector" as that term is defined by Iowa Code § 537.7102(5).

## IV.    FACTUAL ALLEGATIONS

9. Between June, 2006 and May, 2008, the Plaintiff rented a home with her mother, Susan Marie Schull ("Susan"). The Plaintiff and her mother contracted for gas and electric through the Defendant, Xcel, and both the Plaintiff and her mother were listed on the utility account.

10. In June, 2008, the Plaintiff's mother, Susan, bought a home. Susan contacted the Defendant, advised of the changed address as she had purchased a home, and requested a new account be issued to the new property.

11. Susan paid her monthly utility bill to the Defendant between 2008 and 2012 through online banking debit transactions. She did not receive a monthly billing statement in the mail.

12. As will be addressed in these pleadings, at some point in time, the Plaintiff's name was placed on the new account issued to her mother's residence. The Defendant, Xcel, did not change the actual account number but rather merely transferred the existing account to Susan's new address and the account remained in the Plaintiff's name.

13. During the first week of February, 2013, the Plaintiff received two voice messages from a representative of the Defendant, Xcel requesting she return their call.

14. On or about February 13, 2013, the Plaintiff returned the call to the Defendant and spoke with a representative for approximately three minutes. The representative expressed that they were calling in regard to a delinquent utility account in the Plaintiff's name associated with an address of 936 Dodd Road, St. Paul, MN. The Plaintiff explained that the address associated with the account was that of her mother. The Plaintiff explained there must have been some mistake and that when her mother purchased a home in June, 2008 she had a new account issued only in her name and that the Plaintiff did not authorized her name also be placed on the account. The Plaintiff explained this was the first time she had become aware of the error and that her name was associated with the services. The

Plaintiff requested the Defendant investigate and correct the error as this was not her account. The Plaintiff indicated that she would contact her mother, and have Susan contact the Defendant regarding the bill in question. The representative indicated they would look into the matter.

15. The Plaintiff continued to receive collection calls from Xcel. On or about February 22, 2013, the Plaintiff again contacted the Defendant and spoke with a representative for approximately 10 minutes. The representative advised that because the Plaintiff's name was listed as the primary account holder, she was liable for the alleged debt. The Plaintiff disputed the debt and stated that she never authorized services to be issued in her name and that she had never received a bill from the Defendant. The Plaintiff again explained that she and her mother did live together until May of 2008 and did have a joint Xcel account. However, when her mother, purchased a home in June, 2008, Susan called the Defendant to request a new account on the new address. The Plaintiff then requested again that the Defendant correct the error and take her name off of the account.

16. At the time when Susan purchased a home in June, 2008, the Plaintiff moved to Iowa and has continued to reside in Iowa until the present date.

17. During July, 2013, the Plaintiff applied for a home mortgage loan. The Plaintiff found a home she was interested in purchasing. Her lending institution advised they were going to check the Plaintiff's credit and contact her regarding the rates she qualified for.

18. On or about July 22, 2013, the Plaintiff received a call from her Home Mortgage Company (HMC). The HMC advised the Plaintiff of a problem with her credit due to a collections tradeline regarding an Xcel Energy account. The Plaintiff

explained the error involving Xcel and her prior communications disputing the debt back in February. The HMC indicated in order to recalculate the Plaintiff's credit score absent the derogatory tradeline, she would need to secure a letter from Xcel or the collection agency handling the account holding the Plaintiff harmless of the alleged debt.

19. The Defendant, Diversified Adjustment Service, is the collections agency reporting the delinquent Xcel Energy tradeline on Plaintiff's credit report.

20. On July 22, 2013, the Plaintiff contacted the Defendant, Xcel, and spoke with a female representative for approximately 18 minutes. The Plaintiff explained the error with the representative and the subsequent inaccurate credit reporting. The representative advised she saw no notes in the system regarding the Plaintiff's previous calls and disputes in February. The representative asked the Plaintiff if she authorized the new services at her mother's residence be placed in her name. The Plaintiff again stated that she never gave her permission. The representative explained that she would have to provide the information to a supervisor and that someone would be contacting her shortly.

21. On July 22, 2013, the Plaintiff contacted the Defendant, Diversified, and spoke with a female representative. The Plaintiff explained the error to the representative and her previous attempts to dispute the account with Xcel. The Plaintiff explained the bill was that of her mother but because Xcel had it listed in the Plaintiff's name, it was damaging her credit. Despite this information, Diversified's representative advised the Plaitniff that if she paid the bill at that time the derogatory information would be removed from the account. The Plaintiff explained that would not correct the error as it was her mother's account, not hers,

and she only had two weeks to get correspondence from Diversified or Xcel holding the Plaintiff harmless of the charges. The Plaintiff also requested Diversified immediately remove the inaccurate reporting from her credit report. The representative took the Plaintiff's information, advised that she would be contacting Xcel, and would follow up with the Plaintiff.

22. The Plaintiff then again called Xcel back on July 22, 2013 and spoke with a male representative. The Plaintiff again explained the circumstances and the existing error with the representative, that the bill was not hers, that she had never lived at the address, that she never provided permission to transfer services in her name and that she had previously disputed the services with Xcel back in February. The representative indicated Xcel had received a fax back in 2008 with the Plaintiff's social security number on it requesting services in the Plaintiff's name. The representative advised Xcel was not required to speak with the Plaintiff or receive verbal permission to transfer service if Xcel had the information on file. The representative suggested the mother's realtor may have sent the information in to open the account. The Plaintiff advised that would not be possible as they did not have her information.

23. The Plaintiff then advised the representative that she had her mother, Susan, on the line and requested the representative speak with Susan. Susan confirmed that at the time she purchased the home she contacted Xcel and requested services in her name. The representative inquired as to why Susan had not noticed the error prior. Susan explained she had direct bill pay set up on her banking account and did not receive a paper bill. She was not aware of the error. Susan also stated that when the house was auctioned in August of 2012 she called

6

in and requested an itemized final bill and never received same. The representative did acknowledge that payment on the account were made timely and remained current between June, 2008 until August, 2012. The representative continued to argue that he did not need to receive verbal authorization from the Plaintiff to open the account. He went on to state Xcel had records of the Plaintiff calling in on several occasions. The Plaintiff suggested Xcel had no idea who was calling in as they did not ask for the name but merely the account number or the property address. The Plaintiff went on to state that the first conversation she had with Xcel regarding the present account was on February 13, 2013. The Plaintiff then followed up by stating she had proof of her previous addresses through her tax returns as well as gas and electric services opened in her name with other companies during the period in dispute. The Plaintiff ended the call.

24. Later on July 22, 2013, the Plaintiff received a return call from a female representative of Defendant, Diversified. The representative indicated she spoke with her supervisor and again requested the Plaintiff immediately pay the balance in full in order to stop the derogatory credit reporting. The Plaintiff again explained that would not work as the tradeline would remain in her name only to show the account satisfied, but paid late. The Plaintiff again explained that because it was her mother's bill and because she never authorized services in her name, the entire tradeline would need to be removed and that she needed documentation from Diversified holding her harmless of the charges. The representative refused to take any action other than accept payment from the Plaintiff and further advised the Plaintiff she would need to resolve the issue with Xcel.

25. Later on July 22, 2013, the Plaintiff spoke with Xcel's supervisor, Ashton. The Plaintiff went over all of the information as stated in previous paragraphs with Ashton. Ashton alleged the Plaintiff had called in multiple times over the last few years. The Plaintiff stated that every time she called Xcel, they only asked for the account number or property address and never verified who the caller was. As such, it could be explained that it was her mother, not her, that had called in several times. The Plaintiff verified that the first time she spoke with Xcel regarding the account was on February 13, 2013 wherein she disputed the debt and again on February 22, 2013. Ashton requested the Plaintiff explain the fax they had received with the Plaintiff's information. The Plaintiff again explained the fax must have been related to the previous account/services held in her and her mother's name when they lived together between June, 2006 through May, 2008. The Plaintiff explained that when her mother moved in June of 2008 she requested the new services be put in her name and that the Plaintiff never authorized the new account to be placed in her name. The Plaintiff then confirmed she had proof of her addresses subsequent to June, 2008. The Plaintiff then went over the circumstances surrounding her credit and attempts to obtain financing. She requested Xcel immediately contact Diversified and request they delete the tradeline and also requested Xcel forward her correspondence holding her harmless of the services so she may provide that to her HMC. Ashton expressed she would contact Sallie, the representative who dealt with Diversified and that Sallie would contact the Plaintiff the following day.

26. The Plaintiff received a call back from Ashton on July 23, 2013. Ashton explained that the Plaintiff would need to deal with the collection agency,

Diversified, to get the issue resolved. The Plaintiff explained she had attempted to do so but was told the problem must be corrected with Xcel. Ashton told the Plaintiff to call Diversified and tell them she wanted to dispute the debt. Ashton requested the Plaintiff not mention the bill should be her mother's stating it was for Diversified "to figure it out."

27. The Plaintiff called the Defendant, Diversified, on July 23, 2013. The Plaintiff spoke with a male representative and went over the whole set of circumstances again. The Plaintiff stated she was calling to dispute the debt. The representative indicated they had contacted Xcel and were advised that the account was, in fact, the Plaintiff's and that she had "forgot" to have the account transferred into her mother's name. The representative instructed the Plaintiff to call the police and file a fraud report against her mother. The Plaintiff responded that she would not as her mother was also not aware of the error and that she and the Plaintiff had done nothing wrong. The representative then became rude and began yelling at the Plaintiff that Diversified would continue to collect on said account unless the Plaintiff placed fraud charges against her mother.

28. The Plaintiff then contacted Ashton back on July 23, 2013 and explained her conversation with Diversified. Ashton denied the representations alleged by Diversified's representative. Ashton identified a refund check which had been issued on the account in 2009 and requested the Plaintiff explain how it was cashed. The Plaintiff advised that she and her mother had a joint account with Wells Fargo and that her mother may have deposited the check. Ashton again asked the Plaintiff if she had proof of residence since June, 2008. The Plaintiff verified she did and requested the fax number of where to send the information.

9

Ashton agreed to provide same but told the Plaintiff she wanted to wait until she could further investigate the account. The call ended.

29. The Plaintiff became very distraught over the situation as she would be denied financing to purchase the home. Later on July 23, 2013 she contacted the Defendant, Diversified, and spoke with a female representative. The Plaintiff went over the entire story again including the circumstances surrounding her present attempt to gain financing. The representative stated they would continue to collect on the account and hold the Plaintiff responsible for the charges unless she provided proof of a police report filed against her mother. The Plaintiff explained she would not file a false report against her mother, that those were serious allegations and that she couldn't understand why Xcel or Diversified would not take responsibility for the error and correct same.

30. The Plaintiff then contacted her realtor. The realtor provided the Plaintiff with the name of an attorney.

31. The Plaintiff contacted Marks Law Firm on or about July 25, 2013 and explained the situation to attorney L. Ashley Zubal. Given that time is of the essence with issues involved with the Plaintiff's HMC and ability to purchase her first home, attorney Zubal advised the Plaintiff to extend one additional effort in seeking hold harmless correspondence from Defendant Xcel or Diversified. Attorney Zubal advised while the Defendants may be in violation of consumer protection laws and while Diversified may agree to update the credit reporting to reflect a dispute, said dispute would not appear until the next month's cycle, which may prevent the Plaintiff from immediately securing financing from her HMC.

32. During this time the Plaintiff began experiencing emotional distress symptoms including but not limited to stress, anxiety, loss of concentration, sense of helplessness, fatigue, crying spells, loss of sleep, frustration, confusion, and anger, among others.

33. On or about July 25, 2013, the Plaintiff contacted Xcel and spoke with supervisor Carol Shaffer. The Plaintiff explained the entire story again to Carol as well as the pending seriousness involving mortgage financing on her first home purchase. After a review of the notes, Carol asked the Plaintiff if she had authorized services in her name on the residence in Eagan between June, 2006 and May, 2008. The Plaintiff explained that yes, she and her mother lived together and shared expenses and that it was her belief the account was at that time in both of their names. The Plaintiff went on to explain that in June, 2008 her mother purchased a home and called in to Xcel to have the services transferred to the new residence. The Plaintiff at that time moved out of state. Carol confirmed the fax they previously mentioned on file was in relation to the shared apartment between June, 2006 and May, 2008. Carol confirmed when Susan purchased the home and the address changed, the account number never changed; only that services were switched over to the new address. Carol admitted Xcel made a mistake by keeping the Plaintiff's name as the primary holder on the account despite the change in address and the failure of Xcel to secured permission from the Plaintiff to transfer the services. The Plaintiff stated she explained this to Xcel back in February and could not understand why the error had not been corrected. The Plaintiff again offered to provide proof of residence. The Plaintiff explained her mother was also unaware of the error as she paid her bill online and did not receive mailings from

Xcel. Carol finally stated she did not believe Xcel could do anything without a police report against Susan. The Plaintiff refused to file fraud charges against her mother.

34. The Plaintiff indicated to Carol she believed Xcel and Diversified's continue attempts to collect were in violation of debt collection laws. Carol refused to forward correspondence to the Plaintiff holding her harmless of the alleged debt. The Plaintiff stated it seemed that Xcel was trying to place the responsibility on other parties and she felt as though no one was addressing her disputes appropriately. The Plaintiff began to cry. Carol stated she would speak with supervisor Sallie and call the Plaintiff back the next day.

35. On or about July 26, 2013, the Plaintiff received a call from Xcel's representative Ashton. Ashton confirmed Xcel would take no further action unless the Plaintiff filed a police report against Susan. Ashton indicated that future communication would need to be handled through Diversified and there was no point in the Plaintiff calling Xcel back.

36. The Defendant, Xcel, sold, assigned, or other transferred the account to Defendant, Diversified, subsequent to the Plaintiff's dispute communications with Xcel on February 13, 2013 and February 22, 2013, to which Xcel claimed they had no record or notes of the calls.

37. The Defendant, Xcel, failed to advise the Defendant, Diversified, that the account in question was being disputed by the Plaintiff.

38. The Plaintiff, during each called placed to Excel, at no point in time was required to verify her name. She was simply asked either for the phone number on the account or the property address the account was assigned. Because the Plaintiff

did not have her mother's phone number memorized, she provided the property address to pull up the account.

39. The tradeline reported by the Defendant, Diversified, is the only negative or derogatory tradeline appearing on the Plaintiff's credit report.

*Damages*

40. As of the present date, the Plaintiff has been unable to secure financing at an interest rate she would have otherwise received as a result of Diversified's continued inaccurate credit reporting.

41. As of the present date, the Plaintiff has continued to experience emotional distress symptoms including but not limited to stress, anxiety, loss of concentration, sense of helplessness, fatigue, crying spells, loss of sleep, frustration, confusion, fear, headaches, negative effect on family relationships, and anger, among others.

42. The Plaintiff's credit has been damaged as a result of each of the Defendant's actions.

43. The Plaintiff's damages are continuing in nature due to each Defendants' continued attempts to collect from the Plaintiff.

**COUNT I.**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 et seq.**
**(AS TO DEFENDANT DIVERSIFIED)**

44. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

45. Diversified and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the FDCPA

13

including, but not limited to, the following provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

    a. 1692e(2)(A) through the false representation of the character, amount, or legal status of any debt;

    b. 1692e(7) through the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer;

    c. 1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;

    d. 1692e(10) through the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;

    e. 1692e(11) by failing, in every communication with the Plaintiff, to state the communication is from a debt collector and that any information obtained would be used for that purpose; and

    f. 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

    g. 1692f(1) by continuing to attempt to collect on any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

  46. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory

damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant, Diversified, as follows:

1. For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiff;

2. For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant and for Plaintiff;

3. For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiff; and

4. For such other and further relief as may be just and proper.

## COUNT II.
**VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
Iowa Code § 537.7103 et seq.
(AS TO DEFENDANT DIVERSIFIED)**

47. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. Diversified and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, the following provisions of the IDCPA, Iowa Code § 537.7103 et seq.

    a. 537.7103(1)(c) through the false accusation made to a person, including a credit reporting agency, that an alleged debtor is willfully refusing to pay a just debt;

  b. 537.7103(1)(f) through an action or threat to take an action prohibited by this chapter or any other law;

  c. 537.7103(4)(b) by failing, in every communication with the Plaintiff, to state the communication is from a debt collector and that any information obtained would be used for that purpose;

  d. 537.7103(4)(e) through the false representation of the character, amount, or legal status of any debt; and

  e. 537.7103(5)(c) through the collection of or the attempt to collect from the debtor a part or all of the debt collector's fee for services rendered where the debt collector was not legally entitled to collect.

49. As a result of each and every one of the Defendant's violations of the IDCPA, the Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant, Diversified, as follows:

1. For an award of actual damages pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

2. For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

3. For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

4. For such other and further relief as may be just and proper.

### COUNT III.
### INVASION OF PRIVACY
### (AS TO DEFENDANT DIVERSIFIED)

50. The Defendant's continued negative or derogatory credit reporting, with knowledge that the Plaintiff disputed the debt as not legally chargeable to her, as well as Diversified's continued attempts to collect, violated the Plaintiff's right to privacy.

51. The Defendant intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff.

52. The Defendant intentionally caused harm to the Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

53. The Plaintiff had a reasonable expectation of privacy in the Plaintiff's solitude, seclusion, and or private concerns or affairs.

54. These intrusions and invasions by the Defendant occurred in a way that would be highly offensive to a reasonable person in that position.

55. As a result of such invasions of privacy, the Plaintiff is entitled to actual damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for judgment against Defendant in an amount representing full and fair compensation for the injuries and damages as set forth above, for such attorneys' fees, interest, and costs as allowed by law, and for such other relied as may be just under the circumstances.

## COUNT IV.
## VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
## Iowa Code § 537.7103 et seq.
## (AS TO DEFENDANT XCEL)

1. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

2. Xcel and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, the following provisions of the IDCPA, Iowa Code § 537.7103 et seq.

   a. 537.7103(1)(c) through the false accusation made to a person, including, that an alleged debtor is willfully refusing to pay a just debt;

   b. 537.7103(1)(f) through an action or threat to take an action prohibited by this chapter or any other law;

   c. 537.7103(4)(e) through the false representation of the character, amount, or legal status of any debt; and

   d. 537.7103(5)(c) through the collection of or the attempt to collect from the debtor a part or all of the debt collector's fee for services rendered where the debt collector was not legally entitled to collect.

3. As a result of each and every one of the Defendant's violations of the IDCPA, Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y);

and reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant, Xcel, as follows:

1. For an award of actual damages pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

2. For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

3. For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

4. For such other and further relief as may be just and proper.

**COUNT V.**
**INVASION OF PRIVACY**
**(AS TO DEFENDANT XCEL)**

56. The Defendant's sale, assignment or otherwise transfer of the alleged debt to Defendant Diversified, with knowledge that the Plaintiff disputed the debt as not legally chargeable to her, as well as Xcel's continued attempts to collect, violated the Plaintiff's right to privacy.

57. The Defendant intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff.

58. The Defendant intentionally caused harm to the Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

59. The Plaintiff had a reasonable expectation of privacy in the Plaintiff's solitude, seclusion, and or private concerns or affairs.

60. These intrusions and invasions by the Defendant occurred in a way that would be highly offensive to a reasonable person in that position.

61. As a result of such invasions of privacy, the Plaintiff is entitled to actual damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for judgment against Defendant in an amount representing full and fair compensation for the injuries and damages as set forth above, for such attorneys' fees, interest, and costs as allowed by law, and for such other relied as may be just under the circumstances.

## V. JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

  /s/ L. Ashley Zubal
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF